**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Lexstar Construction, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | |
| AGCS Marine Insurance Company, a | ) | |
| foreign insurance company, | ) | Case No. 1:16-cv-423 |
| | ) | |
| Defendant. | ) | |

## I.   BACKGROUND

### A.   The Dispute

This case involves a dispute over insurance coverage for damage to an office building located at 43rd Avenue and Normandy Street in Bismarck, North Dakota.  The damage occurred while plaintiff Lexstar Corporation, LLC ("Lexstar") was constructing the building.  While the building was under construction, Lexstar had in place an inland marine insurance policy ("Policy") issued by defendant AGCS Marine Insurance Company ("Allianz") that provided builder's risk coverage.

The building is built into a hill with the ground sloping from north to south.  Originally, the entire building was going to be four  complete stories with the first floor extending into the side of the hill on the north side.   At site, there was a couple feet of topsoil overlying a layer of glacial till below which was a claystone formation. The firm that did the geotechnical work on the project concluded that the layer of glacial till would not support the load of the foundations but that the underlying claystone formation was suitable.  Because the original design called for the first floor to extend into the hill, the excavation for the foundation below most of the first floor would reach

the claystone formation. The exception was in the area of the southeast portion of the building. There, the geotechnical firm recommended the glacial till be removed and replaced with engineered fill and compacted.

Later the design of the building changed so that the first floor would not extend into the hill for the whole footprint of the building. The net result was that the foundations supporting the building where there was no first floor were going to placed at a higher elevation that did not reach the claystone. The geotechnical firm that provided the original recommendations states it was consulted by Lexstar about the change in design and that it recommended to Lexstar that, for the foundations that originally were going to rest on the claystone, the glacial till be replaced to a recommended depth with engineered fill and compacted.

While the building was under construction, one of Lexstar's subcontractors reported deflection in certain structural steel members. An investigation revealed that at least five of nine column pad footings on the north side below the second floor experienced downward movement during construction, which, in turn, caused the partially-erected building to shift, resulting in damage to its superstructure. The investigation further revealed that six of the nine column pad footings had been placed directly on the glacial till and underlying three others was some loose fill that appeared not to have been compacted. Further, all of the footings were undersized and at least one was not in its proper location.

Before construction could proceed further, the situation needed to repaired. According to Lexstar, the total costs for the repair (which included new foundation installations and lifting the building to the proper elevation) and for the delay in completion of the building was close to a million dollars.

Lexstar made a demand upon Allianz for coverage. After an investigation, Allianz denied coverage, contending that any possible cause of the claimed damages was excluded under the Policy by an exclusion for earth movement ("Earth Movement Exclusion") as well as an exclusion for faulty or defective design and workmanship. Allianz also claimed that Lexstar failed to abide by certain Policy provisions that Allianz contends are a condition precedent to payment under the Policy, *i.e.*, the failure to give timely notice of the loss and failure to submit an appropriate sworn proof of loss.

While there were several issues with the construction, *e.g.*, the column pad footings being placed on soil that was not capable of supporting the load, undersized footings, and at least one footing not located in its proper location, Lexstar takes the position that the overriding problem was the column pad footings not being located on suitable soil. Hence, this will be assumed to be true for purposes of Allianz's motion for summary judgment that is now before the court.

Further, Lexstar agrees with Allianz that there are no material facts in dispute in terms of application of the two policy exclusions invoked by Allianz. In its brief in opposition to Allianz's motion, Lexstar states in relevant part:

> There really isn't much disagreement about what happened to this building and its superstructure during construction. Marc Shannon, Lexstar's expert, describes a shear failure in the underlying native soils on which the support column pads had been placed. (Shannon Expert Report dated January 23, 2018.) Notably, Shannon describes a "load induced movement" of the soils under the foundation, as opposed to some type of natural "earth movement," as the proximate cause of the damage to the foundation and superstructure. (Shannon Affidavit, Exhibit B, pp.1-2). He specifically notes "The damage was not caused by soil settlement, but was caused by a load induced movement due to a shear failure in the foundation soils." Id. at p.2. In short, the weight of the building structure placed on top of native soil caused the earth to shear (and therefore move). This was NOT a situation where there was first some underground shifting or movement of the earth, such as due to underground water or some other earth-induced movement, which caused damage to the building's superstructure; instead it was weight pushing on the ground that caused the earth to "move." It wasn't a natural changing of the soil conditions, but an externally placed force (weight) pressing on the soil which caused the steel superstructure to deflect.

3

* * * *

Notably, no fill was discovered underneath six of the nine footings. As described by AGCS's expert Behrens in his report of March 6, 2014;

> The logs indicated that six of the nine footings (E3.9, D2, C2, A2.1, B2.9, and B4.1) were placed directly on the native glacial till. The remaining three (E5.8, E2.6, and B6.2) were placed on a layer of loose fill above the glacial till." (Waldeck Affidavit, Exhibit M, Doc. No. 21-13, p.7.)

Braun Intertec, a completely neutral engineering firm that was involved in the construction project both before and after the damages were discovered, also concluded that the cause of the structural deflection was a "combination of consolidation and localized shear failures within the glacial till because of stress overload … ." (Waldeck Affidavit, Exhibit E at p.4, ¶2., Doc. No. 21-5, p.4) Of significance is that Braun's conclusion is also that both consolidation and shear failures are due to the weight, ie. "load induced." This overload caused, in Braun's opinion, "racking of the building's superstructure . . ." because of "unintended load paths" due to the consolidation and shear failures in the soil. This racking was ". . . negatively impacting the structure's framing system". Id.

So the question before the Court is whether or not losses or damages caused by shear failure of the native (not compacted fill) soils, either separately or in combination with consolidation of the soils, because of an artificial weight load placed on native soil, which causes damage to the structure of the building placed on top of the soils, is or is not within the language of the exclusions in the Builders Risk Policy. Lexstar's position is, at the very least, that the shear failure and consolidation in the underlying native soil was caused by an external force (i.e., the weight of the building), which caused damage to the building's superstructure, and that such losses are not within the language of the Builders Risk policy exclusions cited by Defendant, and therefore there is coverage.

(Doc. No. 26, pp. 8-9).

**B.** **The Allianz Policy**

**1.** **Coverage and exclusions under the Policy's builder's risk form**

The relevant provisions of the Policy's standard builder's risk form that extend and exclude coverage are the following:

**A.** **Coverage**

**1.** **Covered Property**

> a. Covered Property means:
> Property used in or incidental to construction or installation at Construction Site(s) described and identified in the Declarations which are a part of this policy.

4

\* \* \* \*

**3.     Covered Causes of Loss**
Covered Causes of Loss means Risks of Direct Physical Loss or Damage to Covered Property from any external cause except those causes of loss listed in the Exclusions.

\* \* \* \*

**B.     Exclusions**

1.     We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

\* \* \* \*

**b.     Earth Movement**

(1)     Earthquake, including any earth sinking, rising or shifting related to such event;

(2)     Landslide, including any earth sinking, rising or shifting related to such event;

(3)     Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4)     Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in b.(1) through (4) above, results in fire, explosion or theft we will pay for the loss or damage caused by that fire or explosion. We will also pay for losses to Covered Property from the preceding perils while being transported.

\* \* \* \*

Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.

2.     We will not pay for loss or damage caused by or resulting from any of the

following:

* * * *

**j.**    All costs and expenses incurred in the reengineering, redesign or reworking of any faulty or defective workmanship, materials or design of property we cover.  We will pay for physical damage to other covered property resulting from such faulty or defective workmanship, material or design if discovered as a result of, or aggravated by, a peril or occurrence not otherwise excluded in this policy.

* * * *

3.    We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage to Covered Property by a Covered Cause of Loss results, we will pay for the loss or damage to Covered Property caused by that Covered Cause of Loss.

* * * *

**c.**    Faulty, inadequate or defective:

* * * *

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; of part or all of any property wherever located.

* * * *

* * * *

## 2.    The "Builder's Risk  Plus Endorsement"

In addition to the standard builder's risk form, the Policy also included a "Builder's Risk Plus Endorsement" pursuant to which Lexstar had the option to cover some of the causes of loss excluded under the standard builder's risk form by paying an additional premium.  While Lexstar elected to purchase coverage for some of the excluded causes under the standard form (*i.e.,* coverages  for "Water," "Earthquake," and "Testing/Mechanical Breakdown"), it did not purchase additional coverage for "Earth Movement."

## II. DISCUSSION

### A. Governing Law

#### 1. Motions for summary judgment

The law governing summary judgment is well known to the court and need not be repeated here. E.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Lonesome Dove Petroleum, Inc. v. Holt, 889 F.3d 510, 514 (8th Cir. 2018).

#### 2. North Dakota law governing interpretation of insurance contracts

In Forsman v. Blues, Brews and Bar-B-Ques, Inc., the North Dakota Supreme Court summarized North Dakota law governing the interpretation of insurance contracts:

> [¶10] Insurance policy interpretation is a question of law, which is fully reviewable on appeal. K & L Homes, 2013 ND 57, ¶ 8, 829 N.W.2d 724. This Court independently examines and construes the insurance contract to decide whether coverage exists. Id.; see also Grinnell Mut. Rein. v. Thies, 2008 ND 164, ¶ 7, 755 N.W.2d 852. As with other contracts, this Court construes insurance policy language to give effect to the parties' mutual intention at the time of contracting:
>
> > "We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others."
>
> K & L Homes, at ¶ 8 (quoting State v. N.D. State Univ., 2005 ND 75, ¶ 12, 694 N.W.2d 225) (emphasis omitted). "Exclusions from coverage ... must be clear and explicit and are strictly construed against the insurer." Schleuter v. N. Plains Ins., 2009 ND 171, ¶ 8, 772 N.W.2d 879 (quoting Nationwide Mut. Ins. Cos. v. Lagodinski, 2004 ND 147, ¶ 9, 683 N.W.2d 903). While exclusionary clauses are strictly construed, a contract will not be rewritten to impose liability when the policy unambiguously precludes coverage. K & L Homes, at ¶ 8; Schleuter, at ¶ 8.
>
> [¶11] In interpreting the insurance policy, this Court first examines the policy's coverages before examining its exclusions. K & L Homes, 2013 ND 57, ¶ 9, 829 N.W.2d 724. "If and only if a coverage provision applies to the harm at issue will the court then examine the

policy's exclusions and limitations of coverage." <u>Wisness v. Nodak Mut. Ins. Co.</u>, 2011 ND 197, ¶ 16, 806 N.W.2d 146 (quoting 1 Robert D. Goodman, John C. Dockery & Matthew S. Hackell, <u>New Appleman Law of Liab. Ins.</u> § 1.04[1] (2d ed. 2011) (citations omitted). "An exclusionary provision, or the absence of one, cannot be read to provide coverage that does not otherwise exist." Id. Similarly, while an exception to an exclusion results in coverage, "an exception to an exclusion is incapable of initially providing coverage; rather, an exception may become applicable if, and only if, there is an initial grant of coverage under the policy and the relevant exclusion containing the exception operates to preclude coverage." <u>K & L Homes</u>, at ¶ 9 (citations omitted).

[¶12] "It is axiomatic that the burden of proof rests upon the party claiming coverage under an insurance policy." <u>Grzadzielewski v. Walsh Cty. Mut. Ins. Co.</u>, 297 N.W.2d 780, 784 (N.D. 1980) (quoting <u>Boedigheimer v. Taylor</u>, 287 Minn. 323, 178 N.W.2d 610, 614 (1970)); "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions." <u>Travelers Indem. Co. v. Bloomington Steel & Supply Co.</u>, 718 N.W.2d 888, 894 (Minn. 2006).

2017 ND 266, ¶¶ 10–12, 903 N.W.2d 524.

## B.    <u>Coverage is precluded by the Earth Movement exclusion</u>

Based upon the undisputed facts and plain meaning of the Policy, the court concludes the following:

- The Policy provides coverage for damage to the building under construction that results from an "external cause," except those causes that are excluded by the Policy. Settlement of the earth is an excluded cause of damage under the Earth Movement Exclusion set forth in paragraph B.1.(4).

- In this case, the earth shifted (here because the soil was not capable of supporting the load placed on the column  pad footings in question) and this shifting of the earth resulted in foundation failure and, with a settling of a portion of the building, damage to the building's superstructure.

- None of the damages suffered by Lexstar are compensable given the breadth of exclusions that fall withing paragraph B.1, including the Earth Movement exclusion. This is because paragraph B.1 states there is no coverage for loss or damages "caused

8

directly or indirectly" by causes excluded under that paragraph, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage."

In reaching these conclusions, the court rejects Lexstar's arguments to the contrary. One of Lexstar's arguments is that the Earth Movement Exclusion does not apply because the initiating force causing the soil to shift was the weight of the building and not the soil subsiding from a cause independent of the work. There is nothing in the Earth Movement Exclusion, however, which states that the soil must move independently of the work to be excluded. Rather, as discussed in more detail in a moment, it is clear from the breadth of the language of the Earth Movement Exclusion that any earth movement, no matter how initiated, is an excluded cause. This includes the Exclusion's reference to "improperly compacted soil." Obviously, one of the principal reasons why soil is compacted is so that it can bear weight of the work. Further, as already observed, the exclusion applies even if there is some other cause or event that contributes concurrently or in sequence with it.[1]

Another argument offered by Lexstar is that the Earth Movement Exclusion applies only to earth movement that is naturally caused with "improperly compacted soil" being the only exception. Lexstar then goes on to argue that improperly compacted soil was not a cause in this instance because most of the foundational pads that failed were placed on native glacial till that was not compacted (hence, according to Lexstar, there was no improper compaction) and the others were placed on fill that was described by one or more experts as being "loose" and this is not the equivalent of improper compaction.

---

[1] Even if the court accepted Lexstar's argument that the weight of the building, and not earth movement as defined by the Earth Movement exclusion, is the cause of the damages being claimed, this likely does not get Lexstar anyplace. Under the Policy, there is only coverage for "external causes" and it is doubtful that the weight of the building is such a cause.

The problem with these arguments is that the Earth Movement Exclusion does not state that it is limited to earth movement that is naturally caused except for improper compaction. Rather, part of what is excluded under B.1.(4) is any sinking, rising, or shifting of the earth "including soil conditions which cause settling, cracking, or other disarrangement of foundations other parts of realty." The sentence that follows makes clear these soil conditions include several specifically listed conditions, one of which is "improperly compacted soil, but does not limit the generality of what is excluded in the prior sentences.

In other words, given the generality of the language of the Earth Movement Exclusion, any movement or shifting of the earth is an excluded cause not matter what precipitates it and Lexstar's parsing of the meaning of "improperly compacted soil" is beside the point. But, even putting that aside, Lexstar's contention that "loose" fill material is not the equivalent of improper compaction is facially without merit. Further, a straightforward reading of "improperly compacted soil" in the context in which it is used would include any soil that does not have sufficient compaction to carry the necessary load regardless of the reason. But, to be clear, this does not make difference since any shifting of the earth that causes damages is excluded.

Finally, Lexstar argues that, even if the exclusion applies, it is limited to damage to the foundation and not the superstructure, pointing to the references in paragraph B.1.(4) to "foundations" and "realty." However, the sentence in which these words appear does nothing more than further describe the kinds of earth movement that are covered by the Earth Movement Exclusion. It does not purport to limit the scope of the Exclusion to foundations or what Lexstar deems only to be included within the term "realty."

In summary, earth movement was a cause of the damage to the covered property's foundations and superstructure. Coverage for earth movement was excluded under the Policy's

standard builder's risk form and Lexstar did not buy back coverage for this excluded cause in the Policy's Builder's Risk Plus Endorsement.

### C. <u>Allianz's other arguments</u>

Allianz argues that the exclusion for defective workmanship in paragraph B.2.j also applies. While that appears to be the case (as well as it likely being an independent basis for summary judgment given the absence of any non-excluded "external" cause providing coverage), the court need not decide this point now given its conclusion that the Earth Movement Exclusion forecloses coverage for all of the damages being claimed.

Allianz also argues that coverage is foreclosed by Lexstar's failure to give prompt notice and submit an appropriate proof of loss. The court likewise does not need to reach these issues given its conclusion that the Earth Movement Exclusion applies. However, there may be issues of waiver and/or lack of prejudice that would foreclose summary judgment on these grounds.

### D. <u>Lexstar's argument for coverage based on language appearing in two of the policy exclusions</u>

Lexstar argues that language in two of the Policy exclusions, which constitute exceptions or limitations upon the scope of the exclusions, provides coverage. One of the provisions that Lexstar points to is in paragraph B.2.j, which excludes costs and expenses incurred in reengineering, redesign or reworking of faulty defective workmanship, materials, or design of property. After excluding these costs and expenses, paragraph B.2.j goes on to state:

> We will pay for physical damage to other covered property resulting from such faulty or defective workmanship, material or design if discovered as a result of, or aggravated by, a peril or occurrence not otherwise excluded in this policy.

The other provision that Lexstar points to is at the beginning of paragraph B.3, which lists a number of additional policy exclusions, including faulty or defective design and workmanship under

B.3.c.(2).  More specifically, the language that Lexstar points is that set forth in italics below:

> 3.      We will not pay for loss or damage caused by or resulting from any of the following. *But if loss or damage to Covered Property by a Covered Cause of Loss results, we will pay for the loss or damage to Covered Property caused by that Covered Cause of Loss*.

As noted above, the North Dakota Supreme Court has held that, while language in an exclusion amounting to an exception can result in coverage, it cannot provide coverage where none otherwise exists.  And here, the court has concluded that the Earth Movement Exclusion precludes coverage even if the weight of the building was an external cause, which is a dubious proposition.

## III.   <u>ORDER</u>

Based on the foregoing, Allianz's motion for summary judgment (Doc. No. 19) is **GRANTED** and Lexstar's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED**.

Dated this 16th day of August, 2019.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
